### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONALD MEDVIC,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No.: 10-5222** |
| | : | |
| **COMPASS SIGN CO., LLC** | : | |
| **Defendant.** | : | |

### M E M O R A N D U M

**SITARSKI, M. J.**                                                      **August 10, 2011**

Currently pending before the Court is a motion for summary judgment filed by Defendant

Compass Sign Co., LLC, Plaintiff's Response, and Defendant's Reply.  For the following

reasons, the motion will be **GRANTED IN PART,** and **DENIED IN PART**.


**I.      INTRODUCTION**

Plaintiff Donald Medvic ("Plaintiff") initiated this lawsuit against his former employer,

Defendant Compass Sign Co., LLC ("Defendant") by filing a Complaint on October 5, 2010.

(Doc. No. 1).  Plaintiff asserted two claims against Defendant for alleged violations of Title I of

the Americans with Disabilities Act, 42 U.S.C. § 1201 *et seq.* ("ADA").  First, Plaintiff claimed

that Defendant subjected him to a hostile work environment.  (Doc. No. 1 at ¶¶ 24, 29).  Second,

Plaintiff asserted that Defendant unlawfully terminated Plaintiff's employment because of his

"known or perceived health problems."  (Doc. No. 1 at ¶¶ 24, 29).  On November 19, 2010,

Defendant filed an Answer (Doc. No. 5).

Discovery in this matter closed on April 4, 2011.  (Doc. No. 8).  On May 9, 2011,

Defendant filed a Motion for Summary Judgment.  (Doc. No. 17).  Defendant argues that

summary judgment on the unlawful termination claim is appropriate because Plaintiff is unable to establish a prima facie case of discrimination.  Specifically, Defendant argues that Plaintiff is not disabled within the meaning of the ADA, was not regarded as disabled by Defendant, and was not terminated because of a disability.  *See* Def.'s Mem. Law. Supp. Mot. Summary Judgment, at 10-17.  Defendant further argues that summary judgment on the hostile work environment claim is appropriate because the alleged harassment is not severe and pervasive enough to give rise to an actionable hostile work environment claim.  *See Id*. at 18-21.

On May 23, 2011, Plaintiff filed a Response to Defendant's Motion for Summary Judgment (Doc. No. 18).  On May 27, 2011, Defendant filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment.  (Doc. No. 19).

On June 17, 2011 the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. 632(c) and Federal Rule of Civil Procedure 73, and the matter was referred to me.  (Doc. No. 32). The matter is now ripe for disposition.

## II.    FACTUAL BACKGROUND[1]

### A.    The Parties

Plaintiff, Donald Medvic, worked as a sheet metal mechanic for Defendant, Compass Signs, LLC., from October 2007 to May 12, 2009.  Comp. ¶8; *see also* Pl.'s Statement of Material Facts, ¶¶ 10, 25.  Since his early childhood, Plaintiff has suffered from a speech impediment that causes him to stutter and makes it difficult for him to communicate orally.  Compl.¶¶ 14, 15, *see also* Affidavit of Medvic at 6.  Although Plaintiff knows what he wants to say, at times his stutter

---

[1] Except as specifically noted, the following facts are undisputed.

can prevent him from doing so for several minutes.  Pl's Statement of Material Facts, ¶ 2, *see also* Affidavit of Medvic at No. 9.  Plaintiff has also suffered from anxiety since childhood, and his anxiety exacerbates his stutter.  Pl's Statement of Material Facts, ¶ 4.  *See also* Yorio Dep. at 72. Stuttering cannot be cured, but can be alleviated; Plaintiff has sought and received treatment by taking Xanax, which helps his stuttering by lessening his anxiety.  Pl's Statement of Material Facts, ¶ 5, *see also* Expert Report from David Yorio.

Defendant is a Pennsylvania company that is in the business of manufacturing signs. Defendant is owned by Phil Doerle ("Doerle"), who started the company in 1998 after a career in the sign manufacturing industry.  *See* Doerle Dep.  Defendant employs both union and non-union workers, including union members from Sheet Metal Workers, Local #19.  Def. Statement of Material Facts, ¶ 10.  Plaintiff was a member of the Sheet Metal Workers, Local #19.  *Id*. at ¶ 11. Defendant and Local #19 have a collective bargaining agreement that governed the terms and conditions of Plaintiff's employment.  *Id.* at ¶ 6.  The Local #19 collective bargaining agreement does <u>not</u> contain a seniority provision mandating that any reduction in force must be based on specified criteria, such as seniority.  *Id.* at ¶ 7.

B.      **Plaintiff's Employment History and Hiring at Compass**

Prior to becoming employed by Defendant, Plaintiff worked in the sign business, finding employment at a number of different sign companies.  Medvic Dep. at 16.  At none of these companies did Plaintiff request an accommodation for his speech impediment.  Def.'s Mem. Law. Supp. Mot. Summary Judgment at 4.  Plaintiff was either laid off from those companies for reasons unrelated to his speech impediment, or he left those positions voluntarily, or the company closed.  Medvic Dep. at 18-23.

3

In 2006 Plaintiff was laid off by Abco Signs, his then-employer.  Medvic Dep. at 52.  In July 2007, Chris Buechner, an acquaintance of Plaintiff who was working as a foreman for Defendant, asked Plaintiff to reach out to him when he was looking for work.  Medvic Dep. at 50.  Plaintiff took Buechner up on this offer, and visited Defendant to apply for a job.  Medvic Dep. at 52.

As owner and president of Defendant, Doerle made the hiring decisions for Defendant.  Pl.'s Statement of Material Facts, ¶ 13.  Doerle knew Plaintiff because he had previously hired Plaintiff when Doerle was a manager at another company, Simpson Sign.  Doerle Dep. at 48-49; *see also* Pl.'s Statement of Material Facts, ¶ 13.  Doerle decided to hire Plaintiff in October 2007.  Compl. ¶ 12.

### C.   Employment at Compass

Plaintiff began his employment with Defendant in October 2007.[2]  Compl. ¶12.  Plaintiff's immediate supervisor was Buechner.  Pl.'s Statement of Material Facts, ¶ 14.  During his employment with Defendant, Plaintiff never asked for a reasonable accommodation, and no accommodation for Plaintiff's speech impediment was ever offered or made.  Def.'s Mem. Law. Supp. Mot. Summary Judgment at 4.  However, Defendant was aware of the speech impediment because it was "obvious;" indeed, Buechner testified that he had trouble communicating with Plaintiff because of his stutter.  Buechner Dep. at 66.   On at least one occasion, during his employment with Defendant, Plaintiff's co-workers had to assist Plaintiff in ordering while out for dinner because Plaintiff was unable to effectively do so.  *See* Sangmeister Dep. at 40-41.

---

[2]  Plaintiff's statement of material facts states that Plaintiff began his employment on October 30, 2001.  Pl.'s Statement of Material Facts, ¶ 10.  However, the record clearly indicates that both parties agree that Plaintiff began his employment in October, 2007.

Plaintiff never asked for an accommodation regarding his anxiety, and none was ever offered or made. *Id.* None of Plaintiff's superiors were aware that Plaintiff suffered from anxiety until after Plaintiff's layoff, although Plaintiff did disclose his anxiety to one co-worker, David Sangmeister, during his employment with Defendant. Sangmeister Dep. at 39.

Plaintiff asserts that his speech impediment did not affect his ability to perform his job, and Defendant agrees that his stutter did not interfere with his job performance. Doerle Dep. at 49-52; Buechner Dep. at 65-68; Betteridge Dep. at 21-24; Sangmeister Dep. at 41-44; Roller Dep. at 37-40; Gallagher Dep. at 21-24   On one occasion, Buechner and Doerle discussed giving a customer a warning about Plaintiff's stutter, but ultimately did not do so, because Doerle felt that Plaintiff "always found his way." Doerle Dep. at 50.

While Plaintiff's speech impediment did not affect his job performance, Plaintiff's performance was not without its problems. Defendant cites numerous examples of problems with Plaintiff's performance.[3] Despite these problems Plaintiff was not terminated and continued to work for Defendant through 2009. Compl. ¶20.

Many of the facts concerning Plaintiff's work environment are in dispute. Both parties agree that there was a great deal of joking among co-workers. *See* Medvic Dep. at 93:5-15.

---

[3] The record contains evidence of a number of instances in which Plaintiff's performance was considered by Defendant to be less than adequate. Defendant asserts that Plaintiff was repeatedly careless, damaged signage, showed up late for installations, damaged relationships with customers, and generally "had a record of poor performance unequaled by any other employee of Compass." (Def. Answer Para 16, 20); *see also* Doerle Dep.; Buechner Dep. Plaintiff does not deny that he showed up late for sign installations, but claims it was common practice among employees at Compass to do so. Medvic Dep. at 93. Plaintiff also admits that he sometimes forgot his work orders, but also claims that this was common among Compass employees. *Id.* at 95. Finally, Plaintiff admits that he accidentally hung a letter backwards on one occasion. *Id.* at 97.

However, Plaintiff states that only he was made fun of concerning a disability.[4]  Medvic Dep. at

93:5-15.  Plaintiff specifically claims that on one occasion he was asked by Doerle and Buechner

to "sing for them."  Medvic Affidavit at No. 12.  Plaintiff also contends that Buechner repeatedly

belittled him when he had trouble speaking, by saying things such as "spit it out" and often

walking away angrily before Plaintiff could finish his sentences.[5]  Compl. ¶ 17.  In addition,

Buechner informed Plaintiff that if any problem occurred on the job site, that Plaintiff would be

the one who would be terminated.  Buechner Dep. at 77:14-78:30.  Despite these instances,

Plaintiff never filed a grievance with his Union, Local #19, and continued to work for Defendant.

Medvic Dep. at 56:24-58:7.

     **D.**       **Decision to Lay-off Plaintiff and Filing of Complaint**

     In 2009, the downturn in the economy hit Compass hard, and the company's Net Income

dropped from $247,132.70 in 2008 to $107,361.05 in 2009.  Def. Statement of Material Facts ¶ 4-

5.  In early 2009, Doerle decided that he needed to reduce his workforce.  As previously stated,

Defendant's collective bargaining agreement with Local #19 does not require any specific criteria

to be used when deciding who to lay-off.  Def. Statement of Material Facts ¶ 6-8.  Accordingly,

as owner and president, it was Doerle's decision who to lay off, and what factors to consider in

making the decision.  Pl.'s Statement of Material Facts ¶ 13; *see also* Doerle Dep. at 9:3-6.

---

[4]  Defendant argues that Plaintiff's allegation that only he was made fun of on the basis of his disability is not supported by any facts or specific instances and is "simply a bald, conclusory statement."  Def. Memo of Law in Reply to Opposition, at 5.

[5]  Defendant specifically denies that Buechner belittled Plaintiff and asserts that both Buechner and Doerle attempted to help Plaintiff through any problems he faced, both professional and personal.  Def. Answ. ¶ 17, *see also* Doerle Dep. at 36-37; Buechner Dep. at 65:8-13.

Defendant did not have a set procedure for lay-off decisions.  Doerle did not record his decision-making process, or consult any documents in making the decision.  Doerle Dep. at 86:8-12.  However, Doerle testified that he considers a combination of seniority, skill and ability, and performance in all instances where a reduction in force is necessary.  Doerle Dep. at 13-16; 68.

On May 12, 2009, shortly after an incident in which Plaintiff scratched a sign he had repaired, Doerle relayed his decision to layoff Plaintiff and another man, James Gallagher, to Buechner, who laid the two men off that day.  Compl. ¶ 20.[6]

Thereafter, Plaintiff filed a claim for Pennsylvania unemployment compensation due to "lack of work."  *See* Def. Statement of Material Facts ¶ 12.  On December 8, 2009, Plaintiff filed a timely charge with the EEOC in which he alleged that Defendant discriminated against him as a result of his speech impediment, which causes him to stutter.[7]  *Id.* at ¶ 15.   The EEOC carried out an investigation and issued a right to sue letter on July 19, 2010.  *See* Def.'s Mem. Law. Supp. Mot. Summary Judgment, Ex. CC.  On October 5, 2010, Plaintiff filed the instant complaint.  *See* Compl.

III.   **STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

---

[6]  The record contains conflicting information regarding the timing of the layoff decision. Doerle testified that he originally made the decision to lay off Plaintiff and Gallagher a month prior to the actual layoff date but that Buechner asked him to wait 30 days.  Doerle Dep at 19-20. Buechner does not recall asking Doerle to delay the layoff and states that he first learned of the decision to lay-off Plaintiff and Gallagher on the day of the actual layoffs.  Buechner Dep. at 71. This factual dispute is not material, and does not impact this summary judgment analysis.

[7]  Plaintiff did not explicitly allege discrimination due to anxiety in his EEOC complaint.

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if there is

sufficient evidence from which a jury could find in favor of the non-moving party.  *Id.*  It is not

the court's role to weigh the disputed evidence and decide which is more probative, or to make

credibility determinations.  Rather, the court must consider the evidence, and all reasonable

inferences which may be drawn from it, in the light most favorable to the non-moving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) *(citing United*

*States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962));  *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d

358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the

court must accept as true the allegations of the non-moving party, and "all justifiable inferences

are to be drawn in his favor."  *Anderson,* 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the moving party

carries this initial burden, the non-moving party must "come forward with specific facts showing

there is a genuine issue for trial."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  The non-moving

party must present something more than mere allegations, general denials, vague statements, or

suspicions.  *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884,

890 (3d Cir. 1992);  *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

Instead, the non-moving party must present specific facts and "affirmative evidence in order to

defeat a properly supported motion for summary judgment."  *Anderson*, 477 U.S. at 257.  "If the

evidence is merely colorable, or is not significantly probative, summary judgment may be

8

granted." *Id.* at 249-50.   If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden.  *Celotex Corp.*, 477 U.S. at 322-23.

## IV.    DISCUSSION

### A.    Unlawful Termination in violation of the ADA

The ADA prohibits covered employers from discriminating against disabled individuals. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (*citing* 42 U.S.C. § 12112(a) (2006)).[8]  To analyze such claims, courts utilize the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).  Under the *McDonnell Douglas* framework, the plaintiff has the initial burden to show a prima facie case of discrimination; the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for the employment actions; and finally, the burden shifts back to the plaintiff to prove that the offered reason is pretextual.  *Id.* at 500-01.

### 1.    Prima Facie Case

A *prima facie* case of disability discrimination requires that the plaintiff successfully show that (i) he is disabled within the meaning of the ADA; (ii) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and (iii) he was subject to some adverse action as a result of his disability.  *See Gand v.*

---

[8]  The ADA Amendments Act of 2008 took effect on January 1, 2009.  *See* ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat, 3553 (2008).  The parties agree that Plaintiff was terminated on May 12, 2009, thus these Amendments were in effect at the time of the event in question.

*Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

### i.        Plaintiff is Disabled within the meaning of the ADA

In order for a plaintiff to be considered disabled under the ADA, he must show that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such impairment; or (3) he is regarded as having such impairment.  42 U.S.C. § 12102(2).

The regulations accompanying the ADA define  "major life activities" as "those basic life activities that the average person in the general population can perform with little or no difficulty."  29 C.F.R. § 1630.2(i) (1999).  Examples of major life activities include: caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  29 C.F.R. § 1630.2(i).  An impairment is defined as "'[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine."  29 C.F.R.  § 1630.2(h)(1). "Substantially limited" means that an individual is either: (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner or duration under which he or she performs the activity as compared to the condition, manner or duration under which the average person in the general population performs the activity.  29 C.F.R. § 1630.2(j)(1)

In the instant case, Plaintiff asserts that his impairment is stuttering.  Plaintiff asserts that his stuttering substantially limits his major life activity of communication.  Defendant does not dispute that stuttering is an impairment that can affect a major life activity.  The Court agrees that

stuttering is an "impairment" under the ADA.  *See e.g. Sterling v. McKesson Automation Inc.*, 2006 WL 2792203 (W.D.Pa. Sept. 26, 2006) (noting that stuttering, caused by epilepsy, can be a physical impairment but in that case it did not substantially limit a major life activity); *Andressen v. Fuddruckers, Inc.*, 2004 WL 2931346 (D. Minn. Dec. 14, 2004) (noting that there is case support for the idea that stuttering, if substantially limiting, can constitute a disability under the ADA).

Defendant argues that they are nevertheless entitled to summary judgment because Plaintiff's stuttering does not *substantially limit* a major life activity.  Thus, the Court next considers whether Plaintiff is substantially limited by his impairment.

"Courts have noted that the determination of whether an impairment substantially limits a major life activity is at least a mixed question of fact and law, if not entirely a factual one." *Solivan v. Valley Housing Development Corp*., 2009 WL 3763920, *5 (E.D.Pa. Nov. 9, 2009) (*citing Khalil v. Rohm and Haas Co.*, 2008 WL 383322, *8 (E.D.Pa. Feb. 11, 2008)).

Here, Plaintiff has submitted evidence from a medical professional that his stuttering is both severe and substantially limits his ability to communicate.  However, a medical diagnosis is not enough.  The plaintiff must produce individualized evidence showing that their limitation has substantially affected them in their *own* experience.  *Hopkins v. St. Josephs Creative Beginning*, 2003 WL 22795302, at *13 (E.D.Pa. Nov. 7, 2003) (emphasis added).  In this case, Plaintiff has produced individualized evidence in the form of deposition testimony of Plaintiff and his co-workers.

Plaintiff testified that although he knows what he wants to say, his stuttering can keep him from communicating his thoughts to others for up to minutes at a time.  Pl's Statement of Material

11

Facts, ¶ 2.  Plaintiff also told his treating physician that his stuttering impedes his social life.

Yorio Dep. at 70.  Finally, Plaintiff's struggle with stuttering during his own deposition testimony

evidences his substantially limited ability to communicate.[9]  *See* Medvic Dep.[10]

       In addition to his own testimony, Plaintiff's co-workers testified that Plaintiff's stuttering

limits his ability to communicate.  *See* Buechner Dep. at 66; Sangmeister Dep. at 40-41.

Plaintiff's supervisor, Buechner, stated that Plaintiff's stutter, at times, made it difficult for him to

communicate with Plaintiff.  Buechner Dep. at 66:6-9.  Plaintiff's co-worker, Sangmeister,

described an instance in which Plaintiff's stutter rendered him unable to order dinner for himself

while dining with co-workers.  Sangmeister Dep at 40-41.  Finally, Defendant acknowledges that

Plaintiff "was unable to verbally communicate" at times.  Def. Ans. ¶16.  As discussed below, this

evidence creates a substantial issue of fact on the question of whether Plaintiff is substantially

limited by his stutter.[11]

---

    [9]  In the context of determining if a speech impediment substantially limits a plaintiff's ability to communicate, courts may look to the plaintiff's own deposition testimony to assist them in making the determination.  *See e.g. Dorn v. Potter*, 191 F. Supp. 2d 612 (W.D.Penn. 2002); *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999); *Reeder v. Frank*, 813 F. Supp. 773 (D. Utah 1992); *Andressen v. Fuddruckers, Inc.*, 2004 WL 2931346 (D. Minn. Dec. 14, 2004); *Brotchner v. Fed. Express Corp.*, 2006 WL 1049344 (W.D. Tenn. Apr. 19, 2006).

    [10]  Plaintiff often had trouble communicating and conveying his answers to deposition questions throughout his deposition testimony.  For example, in response to questions concerning the medication Plaintiff was prescribed it took Plaintiff several tries before he was able to effectively convey his answers to the questions.  Medvic Dep. at 10.

    [11]  The cases that have found stuttering to not be substantially limiting involved situations where the plaintiff admitted that their stuttering was not a handicap.  *See e.g. Colon Anabitarte v. Frito Lay Quaker Puerto Rico*, 2009 WL 5892997 (D.Puerto Rico. Oct. 13, 2009); *Bates v. Wisconsin-Department of Workforce Development*, 636 F.Supp. 2d 797 (W.D.Wis. June 23, 2009); *Zhong v. Tallahatchie General Hosp. & Extended Care Facility*, 1999 WL 33227442 (N.D. Miss., Sept. 28, 1999); *Preacely v. Schulte Roth & Zabel*, 17 Fed. Appx. 57, 2001 WL 1001181 (2d Cir. Aug. 29, 2001)

In determining whether an impairment is substantially limiting, the Court should consider factors such as:  (1) the nature and severity of the impairment; (2) the length or expected duration of the impairment; and (3) the actual or expected permanent or long term impact of the impairment.  *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010)  *quoting* 29 C.F.R. § 1630.2 (j)(2).  Viewing the evidence in the light most favorable to Plaintiff, each of these factors tilt in his favor.

First, the deposition testimony of Plaintiff, his treating physician and his co-workers all show that his stutter can be very severe, at times rendering him incapable of verbally communicating for himself.  The second factor also favors Plaintiff, as his stutter is a lifelong impairment that cannot be treated, although it's underlying cause can be alleviated with medication.[12]  Our analysis of the third factor has been altered by the 2008 ADA Amendments Act of 2008, which rejected the "permanent" and "long term" requirement embodied in the original Act and stated that "*episodic* or *in remission* fits within the definition of disability if it would substantially limit when active." (emphasis added).  Here, there is evidence from which a jury could conclude that when Plaintiff's stutter is active, it substantially limits his ability to communicate, sometimes rendering him totally incapable of communicating at all.  This actual impact, which may be episodic, is also lifelong.  Thus, I find there is sufficient evidence from which a jury might conclude that Plaintiff suffers from a substantially limiting impairment within the meaning of the ADA.

Defendant asserts that Plaintiff's stutter does not substantially limit his ability to

---

[12]  The ADA Amendments Act of 2008 states that mitigating factors are not to be considered  to determine whether an impairment substantially limits a major life activity, with exceptions for eyeglasses and contact lenses.

13

communicate because he "sat for his deposition and if necessary would be a witness at a trial."

However, Defendant ignores the fact that Plaintiff can still be substantially limited in

communicating even if he is able to communicate at times without limitation.  This Court does

not agree with the suggestion that Plaintiff must be incapable of performing activities where oral

communication is necessary to be disabled within the meaning of the ADA.  *See e.g. Bragdon v.*

*Abbott*, 524 U.S. 624, 640 (1998) ("when significant limitations result from the impairment, the

definition is met even if the difficulties are not insurmountable").  In 2008, Congress enacted the

ADA Amendments Act with the intent to broaden the protections afforded by the ADA in part

because "the current Equal Employment Opportunity Commission ADA regulations defining the

term 'substantially limits' as 'significantly restricted' are inconsistent with congressional intent,

by expressing too high a standard."[13]  Pub. L. 110-325 § 2(a)(8).  As such, Defendant's claim that

Plaintiff is not substantially limited because he was able to give deposition testimony, despite the

presence of an obvious speech impediment, is contrary to the 2008 ADA Amendments and misses

the mark, in any event.

Accordingly, Plaintiff has produced sufficient evidence to create a genuine issue of fact

on the issue of whether his stuttering substantially limits his ability to communicate.[14]

---

[13]  Congress further stated that its purpose in enacting the Amendments Act was "to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis...."  Pub. L. 110-325 § 2(b)(5).

[14]  Plaintiff also argues that he was "regarded as" disabled within the meaning of the ADA.  Since this Court finds that Plaintiff has raised a genuine issue of fact as to whether he was actually disabled, Plaintiff's "regarded as" claim need not be analyzed.

### ii. Otherwise Qualified to Perform the Job

Next, in order to make out a *prima facie* case and survive summary judgment, the plaintiff must prove that he or she is otherwise qualified for the position, with or without the assistance of a reasonable accommodation. *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006). An employee is "otherwise qualified' if she "can perform the essential functions of the employment position that such individual holds or desires." *Id* (*quoting* 42 U.S.C. § 12111(8)). The determination of whether one is otherwise qualified is made at the time the employment decision was made. *Id.*

Here, the parties do not dispute that Plaintiff was qualified for the position.[15]  *See* Pl. Memo of Law, at 3 n. 1 ("Defendant does not argue that Mr. Medvic is not qualified to perform the essential functions of his job"). In addition, Plaintiff's supervisor testified that his stutter did not affect Plaintiff's job performance and Doerle stated that Plaintiff was always able to "find his way." *See* Doerle Dep. at 50. Accordingly, Plaintiff has presented sufficient evidence to survive summary judgment regarding the second prong.

### iii. Adverse Action Based on Disability

"The final prong of the *prima facie* case requires evidence that the plaintiff 'has suffered an otherwise adverse employment decision as a result of discrimination.'" *Khalil,* 2008 WL 383322, at *15. There are two types of discrimination: direct and indirect. Direct discrimination occurs when an employer takes an adverse action based on the person's disability. Indirect

---

[15]  While Defendant's Answer states that communication is an "essential function" of Plaintiff's former position, the deposition testimony of Buechner and Doerle establish that they did not feel that Plaintiff's stutter had any effect on his ability to carry out his job.

discrimination occurs when an employer does not make a reasonable accommodation.[16]  Here, Plaintiff argues that Defendant directly discriminated by making an adverse employment decision on the basis of Plaintiff's disability.

"The ADA prohibits discrimination against 'qualified individuals with a disability' in regard to 'advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" 42 U.S.C. § 12112(a).  "Termination, of course, constitutes an adverse employment action within the meaning of the ADA." *Khalil,* 2008 WL 383322 at *15 (*citing Barclay v. AMTRAK*, 435 F. Supp.2d 438 (E.D. Pa. 2006)).

Here, Plaintiff suffered an adverse employment action when he was terminated.  *See id.* Because termination is clearly an adverse employment action, Plaintiff has proven this final element of the prima facie case and thus created a rebuttable presumption that he was terminated because of his disability.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). Therefore, the burden shifts to Defendant pursuant to the *McDonnell-Douglas* framework to rebut this presumption by articulating a legitimate non-discriminatory reason for the challenged conduct.[17]  *Id.*

---

[16]  Plaintiff does not contend that he suffered indirect discrimination.  In fact, Plaintiff acknowledges that he never asked for a reasonable accommodation, nor does he contend that one have should been afforded him.

[17] This presumption does not shift the burden of proof, and Plaintiff still bears the ultimate burden of persuasion to show by a preponderance of the evidence that the Defendant's proffered reason for the adverse action was pretextual and that the real reason for the decision was because of Plaintiff's disability.  *Hicks*, 509 U.S. at 507.  Plaintiff's evidence proffered to demonstrate that he was terminated "because of his disability" and that Defendant's legitimate non-discriminatory reason is pretextual is examined below in the "pretext" stage of the analysis.

### 2.      Employer's Legitimate Non-Discriminatory Reason

Once the plaintiff has established a prima facie case, the defendant has the burden of producing a legitimate non-discriminatory reason for the challenged employment action.  *Texas Dept. Of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  This burden is "one of production not persuasion; it can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  The burden of production is a light burden. The employer is not required to prove that their non-discriminatory reason actually motivated the decision, because the ultimate burden of proving intentional discrimination always rests with the plaintiff.  *See Khalil*, 2008 WL 383322, at *18.

In the instant case, Defendant states that Plaintiff's termination was driven by nothing more than the economy.  To support this assertion, Defendant offers evidence of its decline in net income from the year 2008 to 2009, as well as testimony from Defendant's owner that there was not enough work for Plaintiff to keep him on anymore.  Bad economic times certainly could be a legitimate, non-discriminatory reason for Plaintiff's termination, and Defendant has come forward with evidence that its business has suffered as a result of economic conditions.  This Court finds that Defendant has met its "relatively light" burden.  *See e.g. Williams v. St. Joan of Arc Church,* 226 Fed. Appx.180, 185 (3d Cir. 2007) (finding that Defendant met its burden by stating that it terminated Plaintiff for reasons of the economy).

### 3.      Pretext

Once the defendant has proffered their legitimate non-discriminatory reason, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual.  In order to survive summary judgment, the plaintiff must submit evidence sufficient for a factfinder to "either

(1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller v. Orix Credit Alliance, Inc*., 130 F.3d 1101, 1108-09 (3d Cir. 1997); *See also Fuentes v. Perski*, 32 F.3d 759, 763 (3d Cir. 1994).  The plaintiff can discredit an employer's proffered reason by demonstrating "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action" *Fuentes*, 32 F.3d at 765.

In this case, Defendant asserts that layoffs were required due to the economy.  Doerle, as owner, decided who to lay off by considering the employees' performance, skill or ability, and seniority.  The union contract was silent as to how layoff decisions were to be made.  Defendant thus argues that it was in Doerle's discretion to determine how to evaluate these factors, as long as he did not do so with discriminatory animus.  Defendant asserts that Plaintiff has no evidence of discriminatory animus.

In terms of performance, Doerle made his decision based on his own subjective factors,[18] not a company policy or union contract.  Doerle Dep at 65.  Doerle did not have any formal mechanism for determining performance, as he did not carry out performance evaluations.  *Id* at 67.  Doerle also did not keep employee performance records.  *Id*. at 68.  Regarding Plaintiff's performance, Doerle testified that he showed up late for work, and sometimes did not show up at

---

[18]   Doerle stated that he looked at "a broad array of things," in determining performance such as if an employee was a good person, responsible, accountable, and clean.  Doerle Dep. at 66.  When asked to characterize a particular employee's performance, he indicated that the man was a good performer by answering simply: "good guy."  *Id.* at 71.

all.[19]  Doerle also testified that Plaintiff "destroyed him" on a particular job by not fixing a sign, which Doerle then had to fix at a large cost to Defendant.  Doerle Dep. at 55.  However, Doerle also testified that Plaintiff's performance on that particular job had no impact on the decision to layoff Plaintiff.  Doerle Dep. at 56.

Considering the subjective nature of Doerle's evaluations of performance and Plaintiff's testimony concerning similar conduct by other employees, the evidence does not provide a clear performance basis for termination.  It does not appear that any objective criteria where applied in evaluating Plaintiff's performance.  "Subjective evaluations of performance are more susceptible of abuse and more likely to mask pretext than objective job qualifications."  *Weldon v. Kraft, Inc*;, 896 F.2d 793, 798 (3d Cir. 1998).  Accordingly, it will be the responsibility of the factfinder to determine whether or not Doerle's subjective evaluation of performance was legitimate or "masked pretext."

In terms of skill and ability, it is unclear exactly what, if any, weight Doerle gave this factor when he made his decision to layoff Plaintiff.  Doerle testified that this factor was determined by looking at an employee's experience and whether or not the employee had the ability to do all the necessary things to perform his job.  Doerle Dep. at 23.  Defendant seems to concede that Plaintiff had the ability to perform his job, as Defendant states that Plaintiff's speech impediment did not impede him from carrying out the essential functions of his job.  It should also be noted that Plaintiff has worked in the sign industry for his entire career, and thus was quite experienced at the time of his termination.  When explaining how he made the layoff decision in

---

[19]  Plaintiff claims that he does not recall any instances of signing up to work and then not showing up.  Medvic Dep. at 94.  In addition, Plaintiff claims that although he may have shown up to work late a few times, it was common to do so among employees at Compass.  *Id.* at 93.

the instant case, Doerle relies mainly on performance and seniority as his basis.  Doerle Dep. at

68.  Thus, the factfinder may determine that Plaintiff's skill and ability was not the legitimate

reason for termination.

In terms of seniority, Plaintiff has submitted evidence of inconsistencies in how this was

calculated.  Plaintiff claims that a former co-worker, who was rehired *after* Plaintiff started with

the Defendant, should have been laid off before Plaintiff, as he was a less senior employee based

on hiring date.  Defendant responds it was under no obligation to "reset" the former employee's

hiring date.  However, in taking all evidence and the inferences raised therein in the light most

favorable to Plaintiff, this inconsistency at least raises the question that Defendant's seniority

calculation was influenced or partially motivated by discriminatory animus.  *See e.g. Watson v.*

*Pennsylvania,* 2009 WL 975239 at *5 (M.D. Pa. Apr. 9, 2009) (denying defendant's summary

judgment motion because the defendant was unable to show their evaluations were based on truly

objective criteria in making their decision); *O'Hare v. Mclean Packaging and Trucking*, 2009 WL

3207277 (D.N.J. Sept. 29, 2009) (denying defendant's summary judgment motion because of their

inability to demonstrate with any specificity how neutral criteria were applied when deciding who

to lay off).

In short, the discretionary, subjective-based nature of the decision making process along

with the inconsistencies in testimony regarding this process–when viewed in the light most

favorable to the Plaintiff–are enough to create a genuine issue of material fact that the employer's

proffered reason for the employment decision was a pretext for discrimination.  Accordingly,

Defendant's motion as to Count II, Plaintiff's unlawful termination claim, will be denied.

20

**B.**      **Hostile Work Environment in Violation of the ADA**

The ADA expressly prohibits discrimination in the terms, conditions or privileges of one's employment on the basis of disability.  An employer violates this prohibition "when the workplace is permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (*quoting Meritor Savings Bank, FSB v. Vinson*, 477 US. 57, 65 (1986)).  A claim for harassment based on disability requires a plaintiff to establish that: (1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) it was sufficiently severe or pervasive to alter the conditions of his employment and created an abusive working environment; and (5) that defendant knew or should have known of the harassment, but failed to take prompt effective remedial action. *See Walton v. Mental Health Assoc. Of Southeastern PA.*, 168 F.3d 661, 667 (3d Cir. 1999)

As discussed above, Plaintiff has presented sufficient evidence to create a genuine issue of fact that he is a qualified individual with a disability under the ADA.  However, even assuming that Plaintiff was subject to harassment based on his disability, and further assuming that all the instances cited by Plaintiff actually occurred,[20] these instances are neither severe nor pervasive enough to create an abusive working environment.  To prove an abusive working environment, plaintiff must show that the environment was objectively hostile or abusive.  Plaintiff must also

---

[20] Defendant contends that Plaintiff's proffered evidence of harassment did not occur or was not used in the context the Plaintiff alleges.  However, in a summary judgment context the evidence is viewed in the light most favorable to the Plaintiff and thus this evidence will be viewed in Plaintiff's favor to have occurred in the context Plaintiff alleges.

show that he perceived the workplace to be hostile or abusive.[21]  *Walton*,  168 F.3d 668.  "A recurring point in harassment opinions is that simple teasing, offhand comments and isolated comments (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  The determination of whether a work environment is hostile or abusive is made by examining the totality of circumstances.  The totality of the circumstances includes evaluating factors such as the "frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance."  *Harris*, 510 U.S. at 23.

In support of his claim for a hostile work environment, Plaintiff has asserted that his supervisor, Buechner, repeatedly said statements to him such as "spit it out" and "hurry up" when he was talking.  Plaintiff further contends that, on one occasion, he was asked to "sing" by Buechner and Doerle.  Pl.'s Statement of Material Facts, ¶¶ 31, 32.  Plaintiff asserts that while everyone "joked around" at Compass, only he was the subject of jokes concerning his disability.  Medvic Dep. at 93.  Finally, Plaintiff claims that Buechner told him that if anything went wrong on the job, Plaintiff would be fired.  Buechner Dep. at 77.

While Plaintiff may have found these remarks offensive, it is well established that mere offensive utterances do not give rise to actionable harassment.  *Harris*, 510 U.S. at 23**.**  To be

---

[21]  Plaintiff has offered sufficient evidence to show that he perceived Defendant's actions as hostile or abusive.  Plaintiff states that he was "humiliated" when asked to "sing" by Buechnner and Doerle and that in general Defendant's treatment of Plaintiff was "demeaning" to him.  Comp. at ¶ 25.  Accordingly, for purposes of the instant motion, the analysis of an abusive working environment will focus on whether or not the environment experienced by Plaintiff was *objectively* hostile or abusive.

sure, the complained-of conduct certainly was immature and insensitive.  However, the instances

that Plaintiff references are not physically threatening, and Plaintiff offers no evidence that his

working conditions were altered, or that his work performance suffered, as a result of these

alleged hostilities.[22]  *See e.g. Hamara v. County of Berks*, 248 Fed. Appx. 422 (3d Cir. 2007)

(while nine instances over a year and four months were found to be insensitive, they did not give

rise to an actionable level of harassment); *Colon v. Frito Lay Quaker Puerto Rico*, 2009 WL

5892997  (D.Puerto Rico Oct. 13, 2009) (instances that were not physically threatening or

humiliating and amounted to nothing more than offensive utterances in regards to plaintiff's

speech impediment are not harassment under the ADA).

_____The "abusive working environment" element ensures that harassment claims do not turn

the ADA into a general civility code, and ensures that only behavior that is "so objectively hostile

as to alter the terms and conditions of ones employment" will be actionable.  *Harris*, 510 U.S. at

21.  It is important for this court to ensure that hostile work environment claims under the ADA,

like those under Title VII, do not punish "ordinary socializing in the workplace–including male-

on-male horseplay."  *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998).[23]

---

[22]  Plaintiff has provided very little specificity as the harassment directed towards him. Plaintiff makes little reference to specific instances of harassment, providing no dates and instead generally asserting that his supervisors made statements to him.  There is no evidence from which this Court could conclude that intense ridicule occurred at certain times; rather, the record suggests sporadic teasing.  With regard to the specific instances referenced by Plaintiff, and taking as true his allegations, they are neither severe nor pervasive enough to establish an actionable hostile work environment claim.

[23]  *Oncale* dealt with harassment under Title VII.  Harassment under the ADA has been recognized and is evaluated in a similar manner as Title VII.  *See e.g. Walton v Mental Health Ass'n of Southeastern* Pa., 168 F.3d 661, 666 (3d Cir. 1999) (courts in the Third Circuit have assumed without deciding that a hostile environment claim exists under the ADA and analyze such claims using Title VII jurisprudence);  *Shaver v. Independent Stave Co.*, 350 F.3d 716 (8th

Furthermore, the inquiry into the severity of harassment requires "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Id.* The fact that Plaintiff was the subject of jokes in an environment permeated with joking among co-workers, even when coupled with Plaintiff's contention that his supervisor expressed anger towards him at times, is simply not a "discriminatory condition of employment."

In short, considering all of Plaintiff's alleged hostile instances together and independently, they simply fall short of establishing an objectively abusive working environment under the *Harris* "severe and pervasive" standard. *See Walton*, 168 F.3d at 667 (an abusive environment did not exist even though a supervisor threatened to fire the plaintiff, called her 10 times, and made repeated offensive remarks to her because it did not meet the *Harris* severe and pervasive standard). Accordingly, Defendant's motion as to Count I, Plaintiff's hostile work environment claim, will be granted.

An appropriate Order follows.


BY THE COURT:


/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

_____

Cir. 2003) (recognizing a hostile work environment claim under the ADA and incorporating Title VII jurisprudence).